# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA, STATE
OF CALIFORNIA, STATE OF COLORADO,
STATE OF DELAWARE, STATE OF
FLORIDA, STATE OF GEORGIA, STATE
OF HAWAII, STATE OF IOWA, STATE OF
MARYLAND, STATE OF MICHIGAN,
STATE OF NEVADA, STATE OF NEW
JERSEY, STATE OF NORTH CAROLINA,
STATE OF OKLAHOMA, STATE OF
TENNESSEE, STATE OF TEXAS, STATE
OF WISCONSIN, and DISTRICT OF
COLUMBIA,

    Plaintiffs,

**EX REL. JOHN MAMALAKIS,**

    Relator,

  v.                                                  Case No. 14-CV-349

**ANESTHETIX MANAGEMENT LLC,**
    d/b/a **ANESTHETIX OF TEAMHEALTH,**
**TEAM HEALTH HOLDINGS, INC.,** and
**DOES 1-100,**

    Defendants.

## DECISION AND ORDER

By way of brief summary, the relator alleges that defendants put in place a scheme by which anesthesiologists would bill for providing medical direction, which is billed at a higher rate and requires more active service, rather than medical supervision, which is billed at a lower rate and does not necessarily require on-site

presence.[1] *See* Second Amended Complaint ("SAC") ¶¶ 1-9, ECF No. 53. This scheme was nation-wide in scope and included Wheaton Franciscan Healthcare-All Saints Hospital in Racine, Wisconsin, where the relator worked.

In a decision entered on December 21, 2017, this Court ordered the relator to file an amended complaint to add the specificity required by Fed. R. Civ. P. 9(b) because the allegations here involve fraud. ECF No. 35. On March 19, 2018, the relator complied and filed his SAC). ECF No. 53. Shortly thereafter, defendants moved to dismiss, asserting that the relator had failed to plead his fraud claims with sufficient specificity, ECF No. 57, and that the Court should compel arbitration for relator's employment retaliation claim, ECF No. 59.

The Court will grant both motions. As to the motion to dismiss, defendants argued that the relator's claims regarding False Claims Act conspiracy, state-law qui tam violations, reverse qui tam, and claims involving allegations outside of All-Saints Hospital should be dismissed and provided compelling support for these arguments. ECF 58, at 27-29. The relator did not respond to those arguments, so those claims are deemed defaulted and are dismissed.

That leaves two False Act Claims contained in Count I and Count III. The general rule for claims asserted under the False Claims Act is that they are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 998 (7th Cir. 2014). Rule 9(b) requires a "plaintiff to do more than the usual investigation before filing [a] complaint. Greater

---

[11] The factual and regulatory background for this action will not be repeated here,

precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.1999) (citations omitted). Indeed, a complaint alleging fraud generally "must provide the who, what, when, where and how" of the alleged fraud. *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir.2007) (quotations and citations omitted).

This requirement of particularity has been construed as demanding that a relator may not, as a rule, rely on "information and belief" pleading; instead, relators are often required to set out their reasons for believing that the allegations of fraud are true. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011). "The general rule that fraud cannot be pled based on information and belief is not ironclad, however: the practice is permissible, so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Id.* at 443.

And that's the problem with relator's complaint—it fails to set out any bases for certain critical allegations, fails to make certain critical allegations, and fails to provide the grounds for the relator's suspicions or to assert that the underlying facts were inaccessible.

In compliance with ECF No. 35, the relator added ten paragraphs that provided examples of fraud involving specific acts, individuals, and rough time

---

as they were exhaustively examined in ECF No. 35.

frames. SAC ¶¶ 103-112. But nine of the examples are plainly deficient: paragraphs 103, 105, 106, 110 & 112, claim that a bill for medical direction, rather than medical supervision, was presented, but provide no support for this claim. Worse, paragraphs 104, 107, 108 & 109, fail even to allege that a bill for medical direction was presented and claim only that doctors were not present at the hospital when they should have been. These allegations fail to support either a claim of false billing or of false presentment. *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016) (providing that relators must present facts that "necessarily le[ad] one to the conclusion that the defendant ha[s] presented claims to the Government").

Paragraph 111 does provide a basis for the claim that medical direction was improperly presented, the hearsay statement of a nurse. Even if this allegation is properly supported, a single instance of a single doctor engaging in questionable billing practices does not support the relator's allegation of a system-wide scheme to defraud. *See United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 893 (E.D. Wis. 2016) (explaining that, to satisfy Rule 9(b), a complaint must contain "representative examples of the fraud"). Accordingly, the SAC does not comply with this Court's order (ECF No. 35) that the relator provide sufficient examples from which it could be inferred that defendants had perpetrated a scheme to defraud.

The relator's argument that TeamHealth Medical Director Dr. Sonya Pease mandated that all doctors engage in improper billing is not supported by the

allegations in the SAC. The SAC alleges as follows:

> At the orientation, Dr. Pease instructed the staff to document each procedure with the goal of fitting it within the Medicare guidelines for medical direction. When asked to be more specific, Dr. Pease explained that the anesthesiologists would need to sign the anesthesia record every fifteen minutes indicating that they had checked in on the patient. The physicians, including Relator, understood her instruction to mean that they should sign the anesthesia record as if they were there for regular fifteen minute intervals, even if they were not actually present at these regular intervals. . . .
>
> Accordingly, TeamHealth at All Saints converted the entire anesthesia program to 100% medical direction across the board – no procedure or operation was performed in which the anesthesiologist was regularly present, and most procedures were performed by the CRNAs.

SAC ¶¶ 56 & 57.

The relator provides no examples of any other doctor construing Dr. Pease's statements as a requirement to bill fraudulently. Indeed, the natural reading of Dr. Pease's statements is that she wanted to ensure that, when billing for medical direction, charting was performed in a manner consistent with Medicare billing requirements, which compute anesthesia time in 15-minute increments. *See* Medicare Claims Processing Manual, Ch. 12, Pt.50.G.

And nowhere does the SAC allege that Dr. Pease directed staff to bill for medical direction when performing services that should be billed for medical supervision. In fact, the SAC alleges that one of the doctors accused of fraud because she billed for services while not at the hospital felt the need to return to the hospital when informed that Dr. Pease had made a surprise visit. SAC ¶ 106. Left unexplained is why this doctor felt the need to return if Dr. Pease was encouraging just this type of fraudulent activity. The relator's claim that Dr. Pease instituted a

5

fraudulent scheme is therefore implausible and unsupported as required by Rule 9(b).

As to the motion to compel arbitration, the relator's employment contract requires arbitration of "[a]ny controversy or claim arising out of, or relating to this Agreement." Physician Agreement, ECF No. 21-1, ¶ 13. The relator asserts that, for this clause to compel arbitration, it should have stated "relating to employment" and that the reference to the Agreement delimits arbitration to contractual disputes.

Not so. The authority that the relator relies upon, *United States ex rel. Paige v. BAE Systems Technology Solutions & Services, Inc.*, 566 F. App'x 500 (6th Cir. 2014), addressed a contract that required arbitration only for actions "arising under" an agreement. *Id.* at 504. But *Paige* specifically noted that the contract did not "include claims 'related' to the agreement," suggesting that, if the contract had, a different result may have obtained. *Id.* at 504.

In any event, the Seventh Circuit views "related to" and "arising out of," the two terms used in the relator's contract, as "extremely broad and capable of an expansive reach." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012) (internal citations and quotations omitted). "Such broad language necessarily creates a presumption of arbitrability, which requires that any doubts concerning the scope of arbitrable issues should resolved in favor of arbitration." *Id.* (internal citations, quotations and alterations omitted). Based on this direction, the Court concludes that, though there exists some ambiguity, the relator's employment

contract mandates arbitration of his retaliation claim. Therefore, that claim must be dismissed.

Finally, all claims are dismissed with prejudice. "Rule 15(a) says that a party may amend its complaint once as a matter of course. After that, leave to amend depends on persuading the judge that an amendment would solve outstanding problems without causing undue prejudice to the adversaries." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013). The relator has been provided multiple opportunities to cure defects, and the Court was clear as to what it expected to see in an amended pleading. At this point, the relator's failure must be attributed to a lack of proof rather than inartful drafting, particularly given the obvious skill of the relator's counsel. Accordingly, the SAC is dismissed with prejudice. *See U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1109 (7th Cir. 2014) (affirming dismissal with prejudice where a relator failed four time to cure defects); *Stanard v. Nygren*, 658 F.3d 792, 801-02 (7th Cir. 2011) (affirming dismissal with prejudice of a second amended complaint).

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendants' motion to dismiss (ECF No. 57) is **GRANTED** and that the Second Amended Complaint (ECF No. 53) shall be **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that defendants' motion to compel arbitration (ECF No. 59) is **GRANTED** and that the relator's retaliation claim must be resolved through arbitration.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2019.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge